Good morning, Your Honors. My name is Clara Porter here on behalf of Appellant Stephen Turner. Now, if you could pull the microphone down a little closer and speak up for those of us who are hard of hearing. And I don't talk about my fellow judges, but I am hard of hearing. Sorry, Your Honor. May it please the Court, I would like to reserve three minutes for rebuttal. Okay. Mr. Turner believes that the district court erred in granting summary judgment to defendants and dismissing his claims. Specifically, Mr. Turner believes that, first, the district court's sua sponte determination that defendants were entitled to absolute immunity is erroneous. Second, the district court erroneously found that defendants' execution of parole conditions did not violate Mr. Turner's right to marry and associate with his fiancée. And third, the district court erred in finding that there was no genuine dispute of a material fact as to whether defendants took retaliatory action against Mr. Turner when they arrested him. And thus, summary judgment should have been denied as a matter of law. Defendants are not entitled to absolute immunity. Contrary to what the district court found, parole officers are not entitled to absolute immunity when they are performing. I had thought the law was that when they're creating the parole condition, it's quasi-judicial and they have absolute immunity. When they're enforcing it, it's not quasi-judicial and they don't have absolute immunity. Am I wrong on that? And if so, could you tell me which authority to look at? That is correct, Your Honor. This circuit has found that when parole officers are imposing parole conditions or they are engaged in actions that go towards granting, denying, or revoking parole, they are covered by absolute immunity. It looks like what the parole officer did is she decided, well, yeah, the guy wants to associate with his fiancée. The fiancée has a daughter, not this fellow's daughter, not Turner's daughter. On the other hand, he has these indecent exposures with girls of similar age, and this girl is entitled to grow up without somebody indecently exposing themselves to her. And there's too much risk here, so I'm going to impose a condition that will keep him away from her. The alternative would be to keep the daughter away from the mother, which would be an extreme destruction of a family that isn't involved in any parole system. Well, we would argue that the court, this circuit in Napaloo, decided that when parole officers are imposing conditions that potentially affect a constitutional right, such as the right to marry and the right to associate with your fiancée, they have to go through a set of conditions and weigh whether the penological or rehabilitative goal is in line with the condition that they're setting, and whether or not the public safety will be affected by the condition that they're setting as well. And so in this case, there was a less restrictive means available. They could have allowed Mr. Turner to see his fiancée. They could have met at neutral places. They did not have to. He could have still stayed away from her daughter. They could have been separate. They didn't have to live together, but they still could have been allowed to communicate. I'm trying to figure out whether this is creation of a parole condition or enforcement of a parole condition. At the time that the parole officers confronted with this decision, whether to allow him to have whatever sorts of contact or visitation, what were the written conditions of parole that the officer was enforcing? So at the time, when he first was released on parole, he was not barred from communicating with his fiancée. And then a few weeks later, they decided, for whatever reason, to include this. They? Who's they? It's unclear. So the supervisor was Defendant Bent, and then the parole officer was Melody Smith. And so in the motion for summary judgment, in Defendant's motion for summary judgment, there's an affidavit or a declaration by Ms. Smith saying that she went through these conditions and decided to impose this. So it's unclear whether she was acting in a supervisory role or whether she was? It's unclear why she was imposing this condition. NAPALU, I think, was a determination whether a condition was appropriate. And this case is a lawsuit for money damages. Immunity would ordinarily apply to a lawsuit for money damages, but not to a test of whether a condition is appropriate. So I would think that NAPALU would be distinguishable on that basis. What am I missing there? Well, we're just? At the time that this lawsuit was filed, Mr. Turner was still on parole, and so the solution at that time would have been to remove the restriction. Let's say hypothetically that the restriction was wrong and it should not have been imposed under NAPALU and what was it, Wolfchild, I think. I'm not saying that that is established. I'm just saying suppose hypothetically. He's not suing to get the condition lifted. He's suing for money damages because it had been imposed. And neither NAPALU nor Wolfchild involved money damages, and it strikes me that in both NAPALU and Wolfchild, had the parole officer been sued for money damages, they would have raised an immunity defense, but no such issue was considered in either case. That is correct, Your Honor. In both cases, the defendants were still in custody when they raised these issues. Similar to Mr. Turner, he was still on parole when he initially raised this issue, and this was actually the fifth amended complaint. So his original complaint was asking that these restrictions be lifted, and then at this point it became because the restrictions were no longer applicable, it became money damages. And for the conditions that? For money damages, even if it does amount to something where only qualified and not absolute immunity would apply, why wouldn't she have qualified immunity? So we would argue that she did not have qualified immunity because the law established at the time the condition was imposed was that you had to go through an analysis and have evidence on the record that would support a finding. So Napaloo and Wolfchild were already down when they? They had already been handed down when the condition was imposed? Napaloo had. Wolfchild had not. And prior to Napaloo, there was already a decision that parolees were allowed to marry and that the constitutional right of marriage had already been solidified by the courts as well. Did Smith herself undertake some kind of individualized analysis before she imposed the condition? It says in the declaration that she looked at his? She got, for some reason, wanted to look at his past charges, which were from 20 years ago. So he was on parole in 2010, and his last instance of indecent exposure, which involved an elderly person, was in 1996 or 1993. And the reason he had been in jail prior to the 2010 parole was unrelated to indecent exposure.  So she took it upon herself to enhance and provide a special condition for his parole, which had not been there before, had not been in place before. And there was no indication that she? She also tried to contact Ms. Miranda, the lady with the daughter, who did not want to talk with her because she did not have a problem or didn't? She was aware of Mr. Turner's history and did not find it a threat to her daughter's safety. Before your time runs too much, could you address the two arrests, the one arrest for traveling to San Francisco without permission and the other arrest for the supposed threat? Yes. So we believe that the arrests, which we believe fall under qualified immunity because they were acting as police officers and when they recommended to the parole board, were for retaliatory purposes. For the first arrest in December, Mr. Turner had been having issues with the parole officers, and both sides were frustrated. One of the parole officers, I believe it was Defendant Sims, told Mr. Turner that if he continues to file these lawsuits, bad things will happen. That was in December of 2011. Were both of these parole officers simultaneously in charge of Mr. Turner? It appears so. There was the people who signed off on his parole application hearings or who testified were Ms. Smith, Mr. Sims, and Mr. Bend. So Ms. Smith was the one who most often appeared at the hearings, but apparently he had contact with Sims as well. And do we know who asked that he be arrested? It was Ms. Smith. But the reason I'm asking this is that Judge Breyer uses it as one of his justifications for finding no retaliation was it was Smith who said you're going to have trouble, excuse me, that it was Sims who said you're going to have trouble, and it was Smith, a different person, who ended up doing the arrest. Yes, but Smith was also part of his lawsuit. So the lawsuit was just against Sims. No, I understand that. But the threat, if we want to call it a threat, came from Sims. Yes, that is correct. But we argue that a jury, a reasonable juror, could find that because parole officers are in contact with each other that they were both upset about these lawsuits. Right. And the information that came to Smith about the threat came from two different people who had been present? So it came first through someone who was in the group meeting, and it was a group therapy session, and it was one of the fellow parolees. And then when they went to verify or ask about it, the person who had been leading the session also confirmed that Mr. Turner had been frustrated and had said, I believe the words were, when I get through with him, she won't be singing any more melodies. Right. Meaning that he was frustrated, and when he gets through with the lawsuits. That's what he says. But through with the lawsuits was not part of what was communicated to Smith. What was communicated to Smith was, when I get through with her, she will not be singing any more melodies. That is what, and that's the other thing that's unclear, if that's what Smith recollects, and that's the exact wording was never flushed out. There's no record of it. All parties agree that he did say she won't be singing any more melodies, but the context in which he was saying it, it's unclear whether that was communicated to Smith or properly. But Turner says, I said when I'm finished with the lawsuits, but that's what Turner says, and she was not in communication with Turner on this point. She was getting information from the other parolee who was present at the meeting, and then the person who ran the meeting. And as I get the evidence, she says what I heard was, when I get through with her. That is correct, Your Honor. But the other issue there was the delay in filing the arrest. If she had thought that she was in imminent danger, she could have taken steps to bring Turner into custody a lot sooner. And the parole board also found that they did not have any evidence to justify imminent danger. I am not clear on why her motive matters because of the Supreme Court decision in Crawford L. They said, I'm reading it now, defense of qualified immunity may not be rebutted by evidence that the defendant's conduct was malicious or otherwise improperly motivated. Evidence concerning the defendant's subjective intent is simply irrelevant to that defense. How do you deal with that? I'm sorry, Your Honor. Did you say absolute immunity or qualified immunity? Qualified. Qualified immunity. So for qualified immunity, you cannot arbitrarily exercise conditions. I thought you could, basically. Wren dealt with arrests that way, and it looks like Crawford L. deals with this retaliatory motive. I thought that what the Supreme Court had done was just take us out of the business of deciding whether the motive was okay. Yes. The Supreme Court decided that for qualified immunity, it has to be knowing that you are violating the law. And so if you are bound to engage in behaviors that you know are contrary to what the law has instated. So, for instance. No, I'm getting at something different. Suppose that she says, well, arresting this guy for making what sounds to me like a threat is justified under the law. The reason I want to do it, I get threats all the time and I don't worry about them. The reason I want to do it is I hate this guy because he keeps suing people like me, maybe. So bad motive, but perfectly legitimate reason to revoke his parole. I thought that meant that she still had qualified immunity under Crawford L. And I'm looking for education in case I'm wrong on that. So when the immunity is qualified in that condition, then there has to be probable cause. And here we were arguing that the probable cause wasn't sufficient because the parole board also found that there was no imminent danger. And Miss Smith also represented that Mr. Turner had a history of violence, which led her to also think the threat was credible. But there's nothing in his history that suggests that as well. So she also was. He was in a national park with a gun and he said he shot a wild boar that was attacking him. It's a real nuisance in national parks that you can't carry a gun if they have predatory large mammals that attack you. But that's the way it is. Yes, and his violation there was for having a gun without a concealed carry permit. There was nothing else to indicate, including his time in prison or in his prior offenses, that he had engaged in any type of violent behavior. And no other sentencing reports or any of his other parole conditions also suggest that he was at risk for violent behavior. OK, why don't we hear from the other side? We've taken you over time, but we will give you a chance to respond. Thank you. Good morning, Your Honors, and may it please the court. My name is Alicia Bauer. I represent the defendants' appellees. I have one clarifying point before I start into my prepared points, and that has to do with the timeline for the parole condition regarding Miranda. So Turner was released on parole in January of 2010. Within a month and a half, he violated his parole by staying overnight in San Francisco with Miranda at a hotel without permission. That was in February. He had another violation in April of 2010. This was where he was on the MyRedBook.com website, and based on that violation, he was returned to custody. When he was released, he had new conditions. That's where you see the new condition. What's Red Book? So MyRedBook.com is the sex escort site that Turner was found to be visiting, thousands of searches there. So the condition regarding Miranda, specifically regarding Miranda, shows up in August of 2011, after he's released based on that violation in April of 2010. Turning to my points here. And that was imposed by Smith? That was imposed by Smith, Your Honor. Thank you. The Miranda-specific parole condition was constitutionally sound, but this Court does not need to reach that question because Turner's parole condition challenge is barred by absolute immunity. Despite his characterization to the contrary on appeal, his challenge below was to the condition itself. It was not an enforcement-based challenge. Summary judgment in favor of the parole officers was correct here, and we ask this Court to affirm for three reasons. First, the record supports the District Court's grant of absolute immunity here because Turner was seeking monetary damages based on an allegedly unconstitutional condition of parole. Second, the District Court correctly found that Turner's First Amendment retaliation claim fails as a matter of law because Turner could not present evidence sufficient to establish each element of that claim as to each defendant. And finally, the District Court correctly found that Turner's First Amendment retaliation claim is also barred by qualified immunity. First, with respect to the District Court's application of absolute immunity, Turner was challenging a condition of his parole imposed by Agent Smith, a restriction on Turner's contact with Miranda, his alleged fiancée. This Court's decisions in Thornton and Swift make clear that absolute immunity bars a parolee's damages claim against a parole officer for imposing allegedly unconstitutional parole conditions. Turner is no longer on parole. He's no longer subject to the conditions at issue. His claims are limited to money damages only. The District Court correctly applied Thornton to find that Turner's challenge to his parole condition specific to Miranda is barred by absolute immunity. Even if absolute immunity did not apply, the condition was constitutionally sound, or at the very least, qualified immunity applies. Parole agents have broad discretion when imposing parole conditions. They're afforded considerable deference. The conditions should be based on the particular circumstances of the individual parolee as opposed to blanket arbitrary conditions, and that's exactly what we have here. So there were four specific circumstances of Turner's case that justified imposition based on parole interest. The first is the record shows that Miranda had sole custody of a minor daughter, and that minor daughter was around the same age as the victim of Turner's earlier offense. Can I interrupt for just a minute and ask, now what is it precisely that Smith forbade him from doing? The exact language of the condition, Your Honor, is you shall have no contact with Amy Miranda except without prior approval of DAPA, which is the Department of Parole. And had he at that point said, I want to get married, or had he said, I just want to go visit with her? Just want to visit with her, Your Honor. And it's disputed whether Turner ever told Agent Smith that that was his fiancee. It's disputed that Agent – When you say it's disputed, this is summary judgment, right? Correct, but even if – So what's the evidence most favorable to him is what matters, not what evidence is favorable to your side. You're right, Your Honor. Even if it's true that he did tell her that that was his fiancee, there's no evidence in the record that he did that before this condition was imposed, which I believe is the question. Is that – Okay, got it, okay. But the exact language of the question is you shall have no contact with Amy Miranda except with prior approval. Okay. And so that's the first condition, and I think for what Agent Smith, based on her experience, Turner increasingly became more interested in spending time with the minor daughter than with Miranda. And so as Ms. Porter mentioned – I think Smith said that was her concern. I don't know what evidence there was for it. The Agent Smith's declaration is in the record, the evidence that she was concerned about that? Yeah, I know she said she was concerned. I don't recall whether there was any evidence showing outside of her saying that it was her feeling that Smith was more interested in the daughter than the mother. It is just her declaration, Your Honor, her testimony that, based on her years of experience, that he was asking to do more things with her, like tutor her, tutor the daughter, take her to the zoo, things like that. It wasn't necessarily a red flag for Agent Smith, but it definitely raised her – it definitely felt out of place for her to the point where she did more investigation. And as Ms. Porter mentioned, what Agent Smith did at that point was told Mr. Turner, I'd like to speak with Miranda, I want to make sure that she understands the conditions of your parole, particularly here where, again, several of Turner's parole violations involved Miranda. So his very first parole violation was staying overnight with her. Then a few months into his parole, he was found to be using that site, myredbook.com, where Miranda was advertising, soliciting sexual services on that site. And this is in the record that Turner was trying to help her with her business at that point. That is directly linked to Turner's criminal offenses here, that he is a high-risk sex offender, and that directly goes to the goals of rehabilitation and deterrence. And then the other piece, of course, is that Ms. Miranda was a prostitute. That's directly related to Turner's possibility of reoffending. So this is very different than the Wolfchild and the Napulu case, where this court held that restrictions on contact with family members are allowed, but that you need to do an individualized review of the relationship. And, for example, in the Napulu case, there the relationship was more about productive behavior versus being founded on criminality. And here we have pretty much the opposite. So in the Napulu case, which is a helpful contrast, we have a relationship, a restriction with a specific person who was helping the parolee with their rehabilitative goals, encouraging them to do the right thing. Here, unfortunately, within a couple of months of being on parole, Mr. Turner's contacts with Miranda were doing sort of the opposite, exactly the opposite here. They were sort of going back to his former crime-related offenses. Moving to my second point, the First Amendment. There you're making kind of a factual argument, and I'm at this point a little more interested in the legal arguments. I guess the big one for me is qualified immunity or absolute immunity on imposing the condition. Why should it be absolute immunity rather than qualified immunity? The claim here was an imposition-based claim, Your Honor, and that's why absolute immunity applies. If you look at the operative complaint, Turner was alleging that the defendants prohibited him from associating with his fiancée, his claimed fiancée, and taking the facts most favorable to him, even if that were true that that was his fiancée at the time. That was a condition of his parole. There's no dispute between the parties that that was a condition that he was restricted from contacting Miranda. That's very similar to the imposition-based challenge in Thornton. There the challenge was I have a residency restriction, I'm challenging that. So that would be if you got into the specifics of that, I wasn't allowed to move in next to a daycare. That would be imposition. That's challenging the condition itself. This is very different than the Swift case. The enforcement-based conduct there was investigation, which is very similar to law enforcement, ordering an arrest. You know, the fight was about things that were much more officer-like aspects of how it was being enforced. Here, it's not that Turner was saying, oh, you know, you ran into, you were following us around, or you barged into our motel room when we were together. It's the condition itself, you're not allowing me to have contact with this person. And even if it was qualified immunity here, we think it would be reasonable based on the circumstances that I mentioned. Agent Smith did an individualized assessment. She was, Mr. Turner was a high-risk sex offender. The California Penal Code has special rules that require additional supervision for those parolees, and she was doing the best she could given his repeated parole violations. And, again, the public safety aspect of the parole interest, which has to do with a daughter, Miranda's daughter. Could you address the two claims with respect to arrests, both the arrest for coming to San Francisco without advance permission and arrest for the, I'll call it threat, at the therapy session? Yes, Your Honor, and those are the retaliation claims, correct? Correct, yes, yes. And I'll just give you a little hint. I'm interested in Judge Kleinfeld's question about whether or not intent is relevant. But we're then stuck with a sort of conundrum. If intent is irrelevant, I don't know how we can even talk about retaliation because retaliation presumes intent. Right, Your Honor. Your Honor, we do agree that intent would be irrelevant here, especially based on the facts of this case. One thing I do want to mention, and I apologize if this is not answering your question, let me know, but Sims, Smith, Bennett, they were not served in this case with a summons until July of 2012. So they weren't in this case. The record is clear that when it was discovered that Agent Sims was part of a lawsuit for Mr. Turner, she was immediately transferred, or he was immediately transferred to a different caseload based on a conflict of interest. That's in the record. But, and this was sort of what you were getting at earlier with Ms. Porter, is that at the end of the day, this was a neutral third party giving her the statement, right? So it was communicated to her, not about a lawsuit. It was, I'm concerned for your physical safety. Threats were being made. He was jumping out of his chair. He was using hostile tones. I'm concerned for you. She confirmed that with the counselor and then initiated, she initiated the parole hold. And so that's why it does create a problem because there's usually going to be some sort of hostility issue between the parties for the First Amendment claim. But here we don't have any evidence of a desire to chill his First Amendment activity. We have the statement about Sims, but there's nothing that agents. There is evidence of an intent to chill First Amendment activity. The statement to him discouraging him from filing lawsuits. And to be clear, Your Honor, it's alleged that Agent Sims said in December of 2011, you've really got to stop these lawsuits. There's no evidence whatsoever that Agent Smith had any desire, any interest, any knowledge of his federal lawsuits. So there's definitely a big disconnect there. And there's no evidence that they spoke about it, that there's any sort of connecting link between those two pieces. And at the point where she instigates this arrest, had she been made a defendant? I don't, I'm not sure, Your Honor, but she wasn't served yet with the summons. Okay. So Turner is trying to impute Sims' threat to Smith. That's correct, Your Honor. So if we were looking at Sims, we would be wrestling with the intent conundrum. But if we accept the notion, I think the district court adopted, which was Smith was operating without benefit of Sims' invocation of the lawsuit. She was acting on the two people she talked to, the parolee and the supervisor who confirmed it. So if that's the case, there's no, her intent is not relevant. It's just objectively whether she's justified her reasons for creating the arrest. That's correct, Your Honor. And two points to follow up also. So the record shows that there was probable cause found for her actions on several occasions after the fact. So the unit supervisor on December 16, 2011, found that there was probable cause to maintain the parole hold. That's excerpts of record 936. Also, the deputy commissioner on December 29, 2011, found probable cause for the parole hold. That's excerpts of record 938. And then the parole administrator also recommended a return to custody, and that's excerpts of record 934. And in the parole context, there just has to be a reasonable belief that there's been a parole violation. And going to your second point, that's also the issue with the claim against Agent Sims, is even if he did make these statements, there's no evidence that he acted adversely based on those statements. So Mr. Turner does have a problem. So Sims did not have Turner arrested? There's no evidence in the record of that, Your Honor. And I see my time has elapsed. If there's no further questions, thank you. Thank you. Thank you. Now, we took you over time. Would you put two minutes on the clock, please? Thank you, Your Honor. I just had a few points to make. First, for Nopaloo, all of the parole violations, like Turner's in the beginning, included were because Nopaloo was visiting her fiance. And the condition on her was a more common one because her life partner was a felon, a convicted felon. But there the court found that that didn't matter based on the nature of their relationship and if it seemed to be helping her. There's also no evidence on the record that Ms. Miranda was a prostitute. She had past arrests. But currently, the parole board did fine because one of the charges that the parole officers held Mr. Turner for in his arrest was a pimp and pandering charge. And they claimed he was looking at online, which was on a computer, in violation of his parole. So we don't contest the computer, that he was on a computer. But the fact that the parole board found that the online work that he was doing wasn't of the pornographic type, it's in concern with, sorry, as to Ms. Miranda because she had a legitimate massage therapy business, which the parole board did fine. So they did not grant his hold based on the charge of, I believe the charge said pimp and pandering. The other thing that I would just like to note was that there were less restrictive alternatives. They could have barred Mr. Turner from visiting the daughter. They could have met at a neutral location. She could have been allowed to call him. He had several parole violations for also calling her. And so something less restrictive would have been appropriate. The condition was that he couldn't do it without prior clearance. So why can't those have served to that approval mechanism served the purpose that you're talking about? Mr. Turner had been having not been getting along with his parole officers. Ms. Smith had been having constant violation issues with Mr. Turner throughout his parole. And so they had a very frustrated relationship at best. And so Mr. Turner, I believe, may have tried once and was denied the right to spend. He might have asked, I think, to spend the night with his fiancée, and it was denied because it was coming off of his initial violation of spending the night with the fiancée. And so he just kind of gave up at that point, I believe. That's as applied. That's not the condition. That's what, Your Honor? Itself. Yeah. Yes, the condition itself, yeah, did say without prior approval. But the relationship between the parole officer and Mr. Turner was so deteriorated that it was unlikely there would be prior approval. And I would also, Ms. Bowers mentioned that there was the board found parole for his December 2011 arrest, that the board found there were valid reasons for a parole hold. That was true, but they found those based on Mr. Turner was agitated when he was arrested. So they found that there was good reason to hold him because he did resist or initially resist being arrested. Okay. Now, you're over the time that we gave you in addition, so if you'd like to sum up. Yes, Your Honor. So we believe that the district court erred in finding that the defendants had absolute immunity because especially for the arrests, the December 11th and December 12th arrests, because we believe qualified immunity was appropriate. And we do believe that there was enough evidence of facts to show that there was a dispute, a material dispute, as to the reasons the officers chose to engage in those arrests. And for Ms. Smith, for her April 2012 arrest of Mr. Turner, also another reason could have been that she was disappointed her initial December arrest was not for longer because it was found that she did not have an imminent threat. Okay. Thank you very much. Thank you. Okay. Thank both sides for their arguments. Turner v. Smith submitted for decision the next case on the calendar, and I may not be able to pronounce the name correctly, Archuleta v. Correction Corporation of America.
judges: Kleinfeld, W. Fletcher, Fisher